**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF MICHIGAN**

**In re:**

**Summit Street Development Company, LLC,**

    Debtor.

_____/

Case No. 14-07339
Chapter 11
Hon. John T. Gregg

**STIPULATED MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS AUTHORIZING DEBTOR TO USE CASH COLLATERAL AND AUTHORIZING ADEQUATE PROTECTION**

Summit Street Development Company, LLC ("Debtor") through counsel, Wolfson Bolton PLLC, for its Motion for Entry of Interim and Final Orders Authorizing Debtor to Use Cash Collateral and Authorizing Adequate Protection ("Motion"), states:

**INTRODUCTION AND STATEMENT OF RELIEF REQUESTED**

1. By this Motion, Debtor seeks entry of a final order under 11 U.S.C. § 363 authorizing Debtor to (i) use cash collateral in the ordinary course of Debtor's business and to pay costs and expenses related to this Chapter 11 case and (ii) make adequate protection payments to Wolverine Bank ("Bank").

2. Debtor seeks entry of this Order an expedited basis. To avoid immediate and irreparable harm, Debtor requires the use of cash collateral to make payments incurred and to be incurred in this bankruptcy case. The United States Trustee and Debtor's only secured creditor have agreed to this relief.

**JURISDICTION**

3. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.

4. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b).

5. Venue of this proceeding and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

**BACKGROUND**

6. On November 21, 2014 ("Petition Date"), Debtor commenced a voluntary case under chapter 11 of title 11 of the United States Code.

7. Debtor continues to operate its business as debtor-in-possession as permitted under section §§ 1107 and 1108 of the Bankruptcy Code.[1]

8. Debtor is a real estate development company. Debtor's primary asset is a building located at 700 May Street in Lansing, Michigan (the "Property").

9. Debtor generates cash collateral by renting space in the Property.

**PREPETITION SECURED DEBT AND DEBTOR'S CASH COLLATERAL**

10. Wolverine Bank ("Bank") asserts claims against Debtor as of November 21, 2014 in the approximate amount of $5,051,075.00 (the "Bank Debt") secured by a first priority mortgage on the Property, a perfected security interest in substantially all Debtor's assets, a perfected security interest in accounts at the Bank, and a guaranty by Harry Hepler, Debtor's majority interest holder. Debtor believes there are no other encumbrances on the Property other than the Bank Debt.

11. Other than the Bank, Debtor believes that no other creditor will assert an interest in Debtor's cash collateral. To the best of Debtor's knowledge, no other creditor holds a valid and perfected security interest in any of Debtor's assets.

12. For purposes of complying with Local Rule 4001-2(a) only, and with full reservation of Debtor's right to assert a different value at any time, Debtor currently estimates the value of all of its Property at $10,050,000 based on an appraisal dated July 24, 2013. The Bank believes that the value of the Debtor's Property is substantially less; nothing in this Motion or the proposed order are intended to prejudice in any way Bank's rights to assert a different value of the Debtor's Property at any time.

---

[1] Unless otherwise specified, statutory references in this Motion are to sections of the United States Bankruptcy Code, 11 U.S.C. § 101, *et seq*.

13.   Debtor intends to pursue an action against the State of Michigan for breach of a lease agreement (the "Lawsuit"). Bank may assert a security interest in the proceeds of the Lawsuit. Debtor has not determined an approximate value of the Lawsuit, but intends to seek substantial damages in excess of $8 million.

## RELIEF REQUESTED

### A.   Use of Cash Collateral

14.   Debtor requires the use of cash collateral to fund its continued operations. Without the ability to use cash collateral, Debtor would be unable to pay for insurance, utilities, snow removal, and other essential expenses necessary to operate Debtor's business, maintain the Property, and comply with the United States Trustee's Guidelines for operation of a business by a debtor-in-possession. Debtor also seeks authorization to use cash collateral to fund tenant improvements when Debtor obtains new tenants.[2] Debtor's anticipated month to month ordinary operating expenses are listed in the budget attached as Exhibit B to this Motion (the "Budget").[3]

15.   Debtor seeks authorization to use the Tax Escrow Account held at the Bank only for the purposes of paying property taxes. After payment of winter property taxes, the balance will remain in the escrow account for payment of summer property taxes. Debtor does not seek use of the Control Account through this Motion.

### B   Request for Interim Relief

16.   Attached as Exhibit B to this Motion is Debtor's Budget from December through the end of February. Debtor projects operating expenses through the end of February of

---

[2] Debtor intends to file a motion to approve any new lease agreement that would become effective before entry of an order confirming a plan.

[3] The Budget does not include professional fees for this case or for the Lawsuit as Debtor's professionals will seek payment of fees only after application to the Court. Debtor also has not included tenant improvements because, although Debtor is in discussions with a number of potential tenants, these discussions have not progressed to the point where Debtor has incorporated new tenant improvements into its budget.

{00036036.DOC }   3

$30,705 (the "Operating Costs").[4] Payment of these amounts is necessary for Debtor to maintain its operations, and remain in compliance with the United States Trustee's operating guidelines. Debtor will also make monthly adequate protection payments to Bank of $18,902.75, including retroactive payments for December and January, for total adequate protection payments through February of $56,708.25. This amount is calculated by the Bank as the average monthly interest-only payment using the pre-petition non-default rate of interest.

17.     Debtor also requests permission to pay the winter property taxes due on February 1, 2015 in the amount of $14,166 from the tax escrow account held by Debtor with Bank ("Tax Escrow Account").

18.     Accordingly, Debtor requests permission to use a maximum of $101,579.25 (Operating expenses - $30,705; adequate protection payments - $56,708.25; winter property taxes - $14,166).

19.     In further support of Debtor's request to use up to 101,579.25, see Affidavit of Harry Hepler, attached as Exhibit C.

**C.     Adequate Protection**

20.     Debtor submits that the Bank is vastly oversecured which, itself, provides adequate protection of Bank's interests in Debtor's cash collateral. Bank asserts that the value of the Property is substantially less than what the Debtor asserts is the value of the Property given the current lack of paying tenants in the building.

21.     As additional adequate protection of Bank's interests, Debtor seeks authorization to make interest-only payments to Bank at the non-default rate of interest under the Bank's pre-petition loan documents, and to grant Bank replacement liens in all Debtor's post-petition acquired assets to the same extent, and with the same priority, as Bank's prepetition liens and

---

[4] This amount excludes monthly management charges of $1,197 which will continue to accrue in favor of H, Inc., but will not be paid until entry of a final order.

{00036036.DOC }                                          4

security interests. For the avoidance of doubt, the replacement liens shall not attach to any avoidance actions (or their proceeds) arising under Chapter 5 of the Bankruptcy Code.

22. Debtor will also (i) keep the Property fully insured, (ii) grant Bank reasonable access to Debtor's business records and premises, (iii) hold all cash collateral in debtor-in-possession accounts maintained at the Bank, (iv) fund the Tax Escrow Account in an amount sufficient to ensure payment of summer property taxes, and (v) otherwise comply with the terms of the proposed order attached as Exhibit A.

## BASIS FOR RELIEF REQUESTED

23. Under section 363(c)(2) of the Bankruptcy Code, a debtor in possession may not use cash collateral unless "(a) each entity that has an interest in such cash collateral consents; or (b) the court, after notice and a hearing, authorizes such use . . . in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2).

24. Bank is entitled to adequate protection of its interests in Debtor's cash collateral. 11 U.S.C. §§ 361, 362(d)(3)(B) and 363(e).

25. Bank has consented to Debtor's use of cash collateral subject to Court approval of the adequate protection set forth in the proposed order and Debtor's compliance with the terms of the proposed order. The proposed adequate protection is an appropriate settlement of Bank's rights to adequate protection.

26. In evaluating the Debtor's settlement with Bank regarding adequate protection and use of cash collateral, this Court should determine whether the settlement is fair and equitable by considering factors such as the probability of success on the merits, the complexity and expense of litigation, and the reasonable views of creditors. *Bauer v. Commerce Union Bank*, 859 F.2d 438, 441 (6th Cir. 1988) (discussing a trustee's authority to settle causes of action).

27. The adequate protection settlement with Bank permits Debtor to use cash collateral and satisfies Debtor's obligations to Bank under 11 U.S.C. § 362(d)(3)(B) without

costly litigation. The use of cash collateral and adequate protection settlement is fair and equitable and should be approved. *See Buckeye Check Cashing, Inc. v. Meadows* (*In re Meadows*), 396 B.R. 485, 499 (B.A.P. 6th Cir. 2008); *In re Cormier*, 382 B.R. 377, 400–01 (Bankr. W.D. Mich. 2008) ("Settlements in bankruptcy cases are favored by law.");10 *Collier on Bankruptcy* ¶ 9019.01 at 9019–2 (stating that "compromises are favored in bankruptcy").

## SCHEDULING A FINAL HEARING

28.     Debtor further respectfully requests that the Court schedule a final hearing on the Motion as contemplated by LBR 4001-2(b)(3).

**WHEREFORE**, Debtor requests that the Court enter an order, substantially in the form attached as Exhibit A authorizing Debtor (i) to use cash collateral, (ii) provide the adequate protection to the Bank as described above, and (iii) granting such further relief as the Court deems appropriate.

Respectfully submitted,

WOLFSON BOLTON PLLC

Dated:  January 27, 2015

By:     /s/ Ryan D. Heilman
       Ryan D. Heilman (P63952)
Attorneys for Debtor
3150 Livernois, Suite 275
Troy, MI  48083
Telephone: (248) 247-7070
Facsimile:  (248) 247-7099
E-Mail:  rheilman@wolfsonbolton.com

**Stipulated and Agreed:**

PLUNKETT COONEY

By:     /s/ David A. Lerner
      David A. Lerner (P44829)
Attorney for Wolverine Bank
38505 Woodward Ave., Ste. 2000
Bloomfield Hills, MI 48304
(248) 901-4010
dlerner@plunkettcooney.com

DANIEL M. McDERMOTT
UNITED STATES TRUSTEE
Region 9

By:     /s/ Michelle M. Wilson
      Michelle M. Wilson
Attorney for the U.S. Trustee
The  Ledyard Building, 2nd Floor
125 Ottawa NW, Suite 200R
Grand Rapids, MI 49503
(616) 456-2002
Michelle.M.Wilson@usodj.gov

{00036036.DOC }   6

## **EXHIBIT INDEX**

| | |
|---|---|
| EXHIBIT A | Proposed Order |
| EXHIBIT B | Budget |
| EXHIBIT C | Affidavit of Harry Hepler |
| EXHIBIT D | Certificate of Service |

costly litigation. The use of cash collateral and adequate protection settlement is fair and equitable and should be approved. *See Buckeye Check Cashing, Inc. v. Meadows (In re Meadows)*, 396 B.R. 485, 499 (B.A.P. 6th Cir. 2008); *In re Cormier*, 382 B.R. 377, 400–01 (Bankr. W.D. Mich. 2008) ("Settlements in bankruptcy cases are favored by law."); 10 *Collier on Bankruptcy* ¶ 9019.01 at 9019–2 (stating that "compromises are favored in bankruptcy").

## SCHEDULING A FINAL HEARING

28.     Debtor further respectfully requests that the Court schedule a final hearing on the Motion as contemplated by LBR 4001-2(b)(3).

**WHEREFORE**, Debtor requests that the Court enter an order, substantially in the form attached as Exhibit A authorizing Debtor (i) to use cash collateral, (ii) provide the adequate protection to the Bank as described above, and (iii) granting such further relief as the Court deems appropriate.

Respectfully submitted,

WOLFSON BOLTON PLLC

Dated: January 27, 2015

By:     /s/ Ryan D. Heilman
Ryan D. Heilman (P63952)
Attorneys for Debtor
3150 Livernois, Suite 275
Troy, MI 48083
Telephone: (248) 247-7070
Facsimile: (248) 247-7099
E-Mail: rheilman@wolfsonbolton.com

**Stipulated and Agreed:**

PLUNKETT COONEY

By: _/s/ David Lerner_
David A. Lerner (P44829)
Attorney for Wolverine Bank
38505 Woodward Ave., Ste. 2000
Bloomfield Hills, MI 48304
(248) 901-4010
dlerner@plunkettcooney.com

DANIEL M. McDERMOTT
UNITED STATES TRUSTEE
Region 9

By: _/s/ Michelle M. Wilson_
Michelle M. Wilson
Attorney for the U.S. Trustee
The Ledyard Building, 2nd Floor
125 Ottawa NW, Suite 200R
Grand Rapids, MI 49503
(616) 456-2002
Michelle.M.Wilson@usodj.gov