UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

**In re:**

**Summit Street Development Company, LLC**
a Michigan corporation,

   Debtor.
_____/

Case No. 14-07339
Chapter 11
Hon. John T. Gregg

# FINAL[1] ORDER AUTHORIZING DEBTOR TO USE CASH COLLATERAL AND AUTHORIZING ADEQUATE PROTECTION

Summit Street Development Company, LLC ("Debtor"), having sought authority to utilize cash collateral and to provide adequate protection to Wolverine Bank ("Bank") through its Stipulated Motion for Entry of an Order Authorizing Debtor to Use Cash Collateral and Authorizing Adequate Protection ("Motion");[2] and the Bank having consented to such relief on the terms contained in this Order; and the Court being otherwise fully advised in the premises;

**THE COURT FINDS** that:

 A. On November 24, 2014 the Debtor commenced a voluntary case under Chapter 11 of the United States Bankruptcy Code (the "Petition Date").

---

[1] The Amended Interim Order Authorizing Debtor to Use Cash Collateral and Authorizing Adequate Protection, entered on February 4, 2105 [Docket No. 27] (the "Interim Order"), provided that the Interim Order could automatically become a final order if no objections to the Interim Order were timely filed. Interim Order, ¶38. As set forth in the Certification of No Objection to the Interim Order Authorizing Debtor to Use Cash Collateral and Authorizing Adequate Protection [Docket No. 30], the deadline for objections to the Interim Order has passed and no objections have been filed. Accordingly, the Interim Order is hereby entered as a final order. This Order amends and supersedes the Interim Order – the only changes being the change in the title, the replacement of footnote one with this footnote, and the deletion of paragraphs 37 and 38 of the Interim Order which governed service of the Interim Order, scheduling of a final hearing, the deadline for objections, and entry of the Interim Order as a final order.

[2] All capitalized terms not defined in this Order shall have the meaning ascribed to them in the Motion.

{00036271.DOCX 3 }            1

B. Debtor continues to operate its business as a debtor in possession as permitted under §§ 1107 and 1108 of the Bankruptcy Code.[3] Debtor is a real estate development company. Debtor's primary asset is a building and land located at 700 May Street in Lansing, Michigan and all property as defined in the underlying mortgage (the "<u>Property</u>").

C. The Debtor is a single asset real estate case as defined under the Bankruptcy Code. The Debtor generates cash collateral by renting space in the Property.

D. At the present time, there is one tenant in the Property occupying less than 15% of the rentable space. An affiliated company, H, Inc., maintains an office at the Property but does not pay rent.

E. The Bank asserts claims against the Debtor in an amount owing to the Bank as of November 21, 2014 in the approximate amount of $5,051,075.00 secured by a first priority mortgage on the Property, a perfected security interest in all of the Debtor's assets, a perfected security interest in accounts at the Bank and the guaranty by Harry Hepler, the Debtor's majority interest holder. There are no other encumbrances upon the Property or personal property other than that owed to the Bank. The Debtor reserves its right to challenge certain components of the Bank's claim. All of the Debtor's Property and personal property may collectively be referred to as "Collateral."

F. Other than the Bank, the Debtor believes that no other creditor will assert an interest in the Debtor's cash collateral. To the best of Debtor's knowledge, no other creditor holds a valid and perfected security interest in any of the Debtor's assets.

G. For purposes of complying with Local Rule 4001-2(a) only, and with full reservation of Debtor's right to assert a different value at any time, the Debtor currently estimates the value of the Property at $10,050,000.00 based on an appraisal dated July 24, 2013. The Bank believes that the value of the Debtor's Property is substantially less and fully reserves its rights to assert

---

[3] Unless otherwise specified, statutory references in this Motion are to sections of the United States Bankruptcy Code, 11 U.S.C. § 101, *et seq*.

a different value of the Debtor's Property at any time.  The Debtor holds an operating account at the Bank in the approximate amount of $20,000.00, a control account at the Bank in the approximate amount of $500,000.00 and a tax escrow account at the Bank in the amount of approximately $40,000.00.  The Bank has a valid perfected security interest in all of the accounts at the Bank.  The control account of $500,000 shall remain at the Bank and not be reduced.

  H.      The Debtor intends to pursue an action against the State of Michigan for breach of a lease agreement (the "<u>Lawsuit</u>"). The Bank asserts a security interest in the proceeds of the Lawsuit.  The Debtor has not determined an approximate value of the Lawsuit, but intends to seek substantial damages in excess of $8,000,000.00.  The Debtor asserts that any commercial tort claim component of the Lawsuit is not secured by the Bank's liens or security interests.

  I.      Entry of this Order is necessary to pay Debtor's on-going business expenses and to comply with the United States Trustee's Guidelines for operation of a business by a debtor in possession. Failure to make payments as set forth in the Budget will result in severe disruption to Debtor's property rental business and could irreparably impair the value of the Property.

**IT IS HEREBY ORDERED** that:

   1.   Debtor is authorized to use cash collateral, but only under the terms and conditions set forth in this Order.

   2.   All cash, negotiable instruments, deposit accounts, securities, proceeds of any Lawsuit against the State of Michigan, proceeds of any collateral which are now in, or may hereafter come into possession of, the Debtor, constitutes and will constitute cash collateral of the Bank and must be segregated and accounted for by the Debtor pursuant to § 363(c)(4) and cannot be used by the Debtor in operating its business or managing its affairs unless the Debtor provides the Bank adequate protection of its interests in the same pursuant to §363(c) of the

Bankruptcy Code. This paragraph does not apply to funds received by Debtor under post-petition financing arrangements approved by the Court under § 364.

3. Bank shall receive replacement liens in the Debtor's post-petition assets to the same extent and with the same priority that they have by virtue of' the pre-petition perfected security interests as of the Petition Date. Bank has a first perfected security interest in the aforementioned assets.

4. Debtor is authorized to use the Tax Escrow Account held at the Bank only for the purposes of paying post-petition real property taxes. After each payment of real property taxes, the balance will remain in the Tax Escrow Account for the next required payment of property taxes. The Debtor will need to continue to fund the Tax Escrow Account to have sufficient funds to pay the anticipated summer property taxes of approximately $100,000.00. To that end, the Debtor will need and is authorized and directed to deposit into the Tax Escrow Account the sum of $10,000.00 a month to adequately fund the Tax Escrow Account. The amount to be deposited into the Tax Escrow Account is subject to modification (higher or lower) so long as sufficient funds are deposited on a monthly basis to ensure payment of each post-petition property tax payment. The deposit into the Tax Escrow Account shall be funded on the first business day of the month.

5. Debtor's permission to use cash collateral shall terminate upon the occurrence of any of the following: a) Debtor's failure to abide by any of the material terms and conditions contained in this Order, any debtor in possession order, or any other order of this Court; b) an order being entered dismissing this case or converting it to a case under Chapter 7 of the Bankruptcy Code, appointing Receiver, and/or Trustee to perform any duties of the Debtor, or terminating the authority of the Debtor to conduct business; c) Debtor's cessation of operations for more than five (5) business days for any reason.

6. As adequate protection of Bank's interests under §§ 361, 362, 363(e) and 364(c) and (d) of the Bankruptcy Code, and to secure the payment of the Indebtedness[4], Bank is hereby granted a first and paramount priority security interest and replacement lien upon the following property of the Debtor: a) the Property, b) all assets of the Debtor, including, but not limited to, all accounts, accounts receivable, notes (and all collateral security therefore) general intangibles (including; but not limited to any insurance proceeds provided, however, that any causes of action brought under Chapter 5 of the Code and recoveries therefrom shall be excluded from the pre and post-petition collateral of Bank), choses in action, Lawsuits against the State of Michigan (except a commercial tort claim component), instruments, documents, chattel paper, goods, inventory, fixtures, equipment, chattels. machinery and furniture, all cash and cash equivalents and bank accounts and checking accounts, and the products and proceeds of all of the foregoing, arising, created or acquired subsequent to the filing of the Chapter 11 Petition (hereinafter referred to as the "<u>Post-Petition Collateral</u>"). The security interests and liens granted by this paragraph shall constitute a paramount and first lien security interest and a perfected mortgage by the Bank on all Property and personal property of the Debtor, with the exceptions set forth above.

7. All indebtedness for adequate protection due to Bank shall have priority over any and all costs and expenses of administration or other priority claims in this Chapter 11 proceeding, including those administrative and priority expenses described in 11 USC §§503(b) and 507(a), except the statutory fees of the United States Trustee. No security agreements or mortgages or the filing of any financing, statements or mortgages shall be necessary to evidence or perfect such security interests, mortgages and liens: provided, however, the Debtor shall execute any documents reasonably requested at any time by Bank to memorialize or evidence

---

[4] Indebtedness is defined as: "debt owed by the Debtor to the Bank, including but not limited to, money owed pursuant to contract, claim, security agreement, promissory note or mortgage."

these liens, security interests and mortgages. Bank shall have all the rights and remedies of a secured creditor in connection with the security interests and liens granted by this paragraph, except to the extent that such rights and remedies may be prohibited by the Bankruptcy Code.

8. To the extent that Bank's collateral is insufficient or inadequate as a result of the Debtor's use of its cash collateral, Bank is hereby granted a super-priority administrative claim of the kind provided and specified under §§ 364(1), and superior to any claim made under 503(b)(1)(A), and/or 507(a)(1) and 507(b) of the Bankruptcy Code, except fees due the U.S. Trustee.

9. Until satisfaction of all Indebtedness, the Debtor will: a) furnish Bank with all financial and other information reasonably requested by Bank, including, among other things, any bills, invoices and proofs of payment as requested by Bank; b) maintain such fire, hazard and extended coverage insurance on all of the Collateral set forth herein to the full replacement value of the Collateral and the Debtor shall designate the Bank as additional lender loss payee, mortgagee and additional insured on all such insurance policies and requiring the insurers to notify the Bank before cancellation of the policies; c) prepare and transmit to Bank, on a monthly basis the following written reports;

   (i) Monthly check disbursement report;
   (ii) Monthly cash inflow report;
   (iii) Monthly cash outflow report;
   (iv) Proof of payment of amounts owed for insurance on the Property;
   (v) Copies of all Bank Statements within seven (7) days of receipt (except Debtor is not required to provide statements of accounts held at Bank);
   (vi) Monthly updates of the Budget; and
   (vii) A variance report showing the actual as compared to the Budget;

and d) permit the Bank during normal business hours to conduct any and all audits or reviews of Debtor's books and records as the Bank shall deem necessary and to make copies there from.

12. The Debtor shall duly pay and discharge as the same shall become due and payable all post-petition taxes, assessments and governmental and other charges, which if unpaid, might become a lien or charge upon the Collateral, assets, earnings or business of the Debtor, as the

case may be. The Debtor shall also pay when due, all administrative taxes, including any and all federal and state withholding taxes and U.S. Trustee quarterly fees, real and personal property taxes and shall provide the Bank with copies of depository receipts or other satisfactory evidence of the same upon request by the Bank. Debtor may use the funds held in the tax escrow account to pay all real property taxes.

13. Until satisfaction of the Indebtedness, except as permitted in this Order or further Court order after notice and opportunity to object, the Debtor will not without prior written consent of the Bank: a) engage in any transaction which is not in the ordinary course of business; b) engage in new or different business activities; c) create, assume or suffer to exist any lien or security interest in favor of any person other than Bank; (d) borrow money from any person to the extent that the repayment of any such borrowing is to be secured pursuant to § 364(d)(1) of the Code by a lien or security interest that is senior or equal to the liens and security interests held by or for the benefit of Bank, or, pursuant to §364(c)(1), senior or equal to Bank; or (e) use cash collateral other than as provided by this Order.

14. Except as permitted in this Order or further Court order after notice and opportunity to object, the Debtor will not without prior written consent of the Bank: the Debtor shall not obtain credit or incur indebtedness secured by security interests in property in which the Bank has an interest, unless a condition of the granting of relief in such proceeding is that: (i) all Pre-Petition Indebtedness shall be paid in full: or (ii) Bank shall have consented thereto previously in writing.

15. Notwithstanding anything to the contrary stated herein, nothing herein shall be construed to prejudice or otherwise limit any right of Bank to apply to this Court for expedited vacation of the automatic stay or for an order authorizing any other relief which in its sole discretion, it deems appropriate, at any time.

16. The terms of this Order and Bank's consent to the Debtor's use of proceeds of the Collateral as provided herein, shall not be deemed to be a waiver of any part of the Indebtedness or a waiver of any claims Bank may have against any third parties, and is without

prejudice to any of Bank's rights, interests and claims of any nature against any person or entity, including, without limitation, the shareholders of the Debtor, the Debtor's current and former account debtors, guarantors of the Debtor and in or to their respective assets, which rights, claims and interests are expressly reserved. Further, nothing in this Order shall be construed to prohibit any actions (including litigation) Bank may take at any time against any guarantors of the Indebtedness or any other collateral for the Indebtedness.

17. Upon the occurrence of a material event of default by Debtor of any duty as described above, Debtor shall immediately cease using cash collateral. and after seven (7) calendar days' written notice given by the Bank, to Debtor, Debtor's attorney, the U.S. Trustee, and attorneys for the creditors' committee, if any, unless the default has been cured during such seven-day period, the automatic stay imposed by § 362 shall be lifted and the Bank shall be permitted to pursue its pre-petition remedies, provided however the Debtor shall have the right to an expedited hearing on any issue, including whether a material default has occurred and whether Debtor shall be entitled to continue use of cash collateral, and whether the automatic stay has been, or shall be lifted.

18. Notwithstanding anything contained herein or in the mortgage, note, security agreement, forbearance agreement, guaranty and any and all loan documents executed in connection with the January, 2014 loan to the Debtor (the "Pre-petition Loan Documents"), or other agreements securing or evidencing the Indebtedness to the contrary, upon the occurrence of a material default the entire Indebtedness remaining, unpaid at the time, at the election of Bank, and without notice of such election and without demand and presentment, shall become immediately due and payable in full, subject to the limitations set forth in the preceding paragraph and under the Bankruptcy Code.

19. Except as otherwise set forth in this Order: (a) the Debtor acknowledges and agrees that the Pre-Petition Indebtedness constitutes valid and binding Indebtedness of the Debtor, without defense, counter-claim or offset of any kind, and is not avoidable nor subject to reduction,

disallowance or subordination of any kind, and that all of the cash generated by the debtor's operations and use of pre-petition collateral in the ordinary course constitutes the Bank's cash collateral as defined in §363(a) of' the Bankruptcy Code; and (b) the Debtor further acknowledges and agrees that the Bank has a valid and perfected security interest in and liens on all of the Debtor's pre-petition Collateral, with priority over all other security interests in and liens on the pre-petition Collateral, and that the Bank's security interest and liens are not subject to avoidance.

20. As further adequate protection, and pursuant to 11 USC §506(b), Debtor agrees to reimburse Bank upon demand for any and all reasonable costs including: attorney fees. consulting fees, audit fees, appraiser's fees, costs, charges or expenses, incurred post-petition allowed by the Pre-petition Loan Documents and incurred by the Bank from time to time, fourteen (14) days after written notice to the Debtor, Debtor's Counsel, U.S. Trustee and any committee appointed, of the amount of the costs to be reimbursed, together with a reasonable description of the services or expenses incurred, provided, however, that no objection to said payment shall have been filed with the Court by the Debtor or any other party in interest. Upon notice of such objection, the Court shall hold a hearing thereon and the Debtor shall not be obligated to make such payment until further Order of the Court. As stated in paragraph 7, above, Debtor believes Bank is oversecured; however, if Bank successfully challenges the valuation the Property such that the payments required by this paragraph are not allowed under § 506(b), any payments so made shall be subject to recharacterization.

21. No delay on the part of the Bank in exercising any right, power or privilege hereunder shall operate as a waiver thereof nor shall any single or partial exercise of any right, power or privilege hereunder preclude other or further exercise thereof or the exercise of any other right, power or privilege. The rights and remedies hereunder specified are cumulative and not exclusive of any rights or remedies which the Bank may otherwise have.

22. The terms and conditions embodied in this Order under which the Bank consents to the Debtor's use of cash collateral represent an agreement among the parties negotiated in good faith and at arm's length. The Bank has acted in good faith indicating a willingness to allow the use of cash collateral under the terms and conditions set forth in this Order and are subject to: (i) entry of this Order and the fulfillment of the conditions stated herein; and (ii) the granting, regranting and continuing of the pre-petition security interest and replacement liens.

23. Any and all cash collateral now held or hereafter received by the Debtor shall be collected, received, maintained and segregated by the Debtor by depositing all cash, checks or other forms of remittance evidencing same in the Debtor's respective debtor in possession bank accounts at the Bank.  The Bank shall be and is granted a perfected security interest in the debtor in possession accounts superior to any interest.

24. Nothing contained herein shall: (a) bar the Bank from (i) asserting rights to default rate of interest, (ii) contesting any collateral valuation by the Debtor, or (iii) challenging the adequacy of any adequate protection provided in this Order; or (b) serve to compromise any rights of the Bank under the Bankruptcy Code, the Pre-Petition Loan Documents, this Order, or pursuant to applicable federal or state law. Likewise, nothing in this Order shall serve to prejudice any of Debtor's rights and arguments with respect to subsection (a) of this paragraph, or compromise or prejudice any other rights and interests of Debtor except as explicitly set forth in this Order.

25. In the event that this Order or any authorization contained herein is reversed or modified on appeal, Bank is entitled to the protection of §364(e) of the Bankruptcy Code with respect to priorities, liens, and security interests granted under this Order, and any reversal, modification or reconsideration of this Order, whether on appeal or otherwise, shall not limit or affect the rights of Bank arising from the use of cash collateral in reliance upon this Order.

26. The provisions of this Order, including the liens and security interests created and affirmed hereunder and the respective priorities of such liens as provided by this Order, and any

actions taken pursuant thereto shall remain in effect and continue in this case of the Debtor under the Bankruptcy Code; and shall be binding on the Debtor and its successors and assigns.

27. Nothing in this Order or the Budget shall constitute the consent by the Bank to the imposition of any costs or expense of administration or other charge, lien assessment or claim against the Bank or the collateral under §506(c) of the Bankruptcy Code or otherwise and all such claims under §506(c) of the Bankruptcy Code or otherwise are hereby expressly waived.

28. The Bank shall not waive, and hereby expressly reserves, any and all claims, defenses, rights and remedies it may have pursuant to any or all of the Pre-Petition Loan Documents, the Bankruptcy Code and/or other applicable law against the Debtor and any officer, director, employee, agent or other representative thereof. In addition, the rights, claims, liens, security interests and priorities of Bank arising under this Order are in addition to and are not intended as a waiver or substitution for the rights, indebtedness, claims, liens, security interests and priorities granted by the Debtor in its pre-petition capacity.

29. In taking any actions reasonably related to this Order, the Bank shall not have liability to any third party and shall not be deemed to be in control of the operations of the Debtor or to be acting as a "controlling person," "responsible person" or "owner or operator" with respect to the operation or management of the Debtor (as such term, or any similar terms. are used in the Internal Revenue Code, the United States Comprehensive Environmental Response, Compensation and Liability Act as amended, or any similar federal or state statute), and the Bank's relationship with the Debtor shall not constitute or be deemed to constitute a joint venture or partnership of any kind between the Bank on one hand, and the Debtor, on the other hand.

30. The provisions of this Order shall be binding upon the Debtor and its successors and assigns, and, except as otherwise set forth in this Order, (i) the Prepetition indebtedness constitutes allowed claims in accordance with §506(a) of the Bankruptcy Code for all purposes in this Case, (ii) Bank's liens and security interests on the Pre-Petition Collateral shall be

deemed to be valid, legal, binding, perfected, not subject to avoidance or subordination and not subject to any other further challenge by any party in interest seeking to exercise the rights of the Debtor's estate, and (iii) as of the effective date of this Order, all claims the Debtor has or may have against the Bank and its respective officers, employees and agents, whether known or unknown, are waived and released.

31. If any of the provisions of this Order are hereafter modified, vacated or stayed by subsequent order of this or any other Court, such stay, modification or vacatur shall not affect the validity and enforceability of any lien, priority, right, privilege or benefit authorized hereby with respect to the Pre-Petition Indebtedness, including without limitation, the replacement liens and super priority claims.

32. As additional adequate protection of the Bank's interest, the Debtor will pay the Bank interest only payments to the Bank at the non-default rate of interest provided for in the underlying Indebtedness and in addition grant the Bank replacement liens in all of the Debtor's post-petition acquired assets to the same extent, and with the same priority, as the Bank's pre-petition liens and security interest.  The payment due December 1, 2014 shall be made on the date this Order is entered with payments beginning January, 2015 on the first business day of the month.   For the avoidance of doubt, the replacement liens shall not attach to any avoidance actions, or their proceeds, arising under Chapter 5 of the Bankruptcy Code, but shall attach to any proceeds of any Lawsuit against the State of Michigan for the alleged breach of the State of Michigan lease.  The Bank's security interest shall not attach to any commercial tort claim component of the Lawsuit.

33. The Debtor plans on employing special counsel to pursue the Lawsuit.  Subject to Court approval, special counsel shall be granted an attorney lien on any monetary recovery from the Lawsuit.  The attorney lien on any monetary recovery shall be a first lien on the monetary proceeds, to be paid first from any commercial tort claim component. The Debtor shall file an

application to employ special counsel with compensation to be determined by the Court upon proper application.

34. The Debtor will also keep the property fully insured and hold all cash collateral and the debtor in possession accounts maintained at the Bank.

35. Notwithstanding any provision contained herein, this Order shall not be binding on any future trustee (chapter 7, 11 or 13).

36. The Debtor may use cash collateral in the maximum amount of $101,579.25 only until the earlier of (A) a final hearing, or (B) the date this order becomes a final order.

37. Debtor shall serve a copy of this Final Order within one business day after entry of this Order on all parties who are required to be served under Federal Rule of Bankruptcy Procedure 4001(d).

Signed: February 26, 2015




John T. Gregg
United States Bankruptcy Judge